Rick LOGAN *v.* STATE of Arkansas

CR 86-214                                    773 S.W.2d 419

Supreme Court of Arkansas
Opinion delivered June 26, 1989

*Everett & Gladwin*, by: *John Everett*; *Gunn & Borgognoni*, by: *Leslie Borgognoni*, for appellant.

*Steve Clark*, Att'y Gen., by: *Theodore Holder*, Asst. Att'y Gen., for appellee.

JOHN I. PURTLE, Justice. On May 2, 1986, the appellant was convicted by a jury of the crime of rape, a Class Y felony, and his punishment was set at 40 years in the Department of Correction. The appellant makes nine arguments for reversal, contending that the trial court erred in: (1) failing to grant a change of venue;

(2) refusing to dismiss the amended information, refusing a request for a bill of particulars, and refusing to grant a continuance; (3) refusing to appoint a special prosecutor; (4) determining that the victim and another witness were competent to testify; (5) allowing expert witnesses to answer hypothetical questions; (6) denying the appellant's motion for a directed verdict; (7) failing to grant a mistrial due to a violation of "the rule;" (8) failing to admonish the jury regarding a statement of the victim relating to other criminal acts; (9) failing to exclude a videotape film on the grounds that it violated the rule against hearsay and did not comply with the provisions of Ark. Code Ann. § 16-44-203 (1987). Finding merit in the appellant's fifth argument, we reverse the conviction and remand this matter to the trial court.

The appellant was an employee of the Sunshine School, an educational facility for developmentally handicapped children. He was charged with the rape of one of the boys at the school, who was 14 years old at the time. The initial information, filed on November 7, 1985, charged the appellant with rape at some point during the period from January 1 through December 31, 1984. At a trial on March 13, 1986, the jury was unable to reach a verdict and a mistrial was declared.

New counsel entered the case on behalf of the appellant on March 24, 1986. The prosecutor again amended the information to change the time period from that previously stated to October 1984 through October 1985. Various motions, including several of the points argued for reversal in this appeal, were presented and denied. The case was tried before a jury from April 29 through May 2, 1986, and a guilty verdict was returned.

The appellant's fifth argument, on which we reverse, concerns the expert witness' testimony in regard to hypothetical questions presented by the state. The state used Dr. Dow, a neurologist, as a witness prior to the victim taking the stand. The state called Dr. Lewis, a clinical psychologist, immediately after the victim had testified. The hypotheticals were so long and complicated that it is most unlikely that the jury could have followed them. (The one posed to Dr. Dow occupies two pages of the record; the one directed to Dr. Lewis runs to four pages.)

One of the questions the prosecutor asked Dr. Dow was: "If I give you a hypothetical of the story that Jimmy [the victim] had

told me, would you be able to give the jury an opinion about whether he would be able to fabricate a story with that many details?" The doctor answered the question by stating that he thought it was an extremely complicated tale for anybody to tell and remember and that he had serious doubts that this victim would be able to make up such a story. He further commented that he certainly would never tell it twice the same way if it were false. The deputy prosecutor also asked Dr. Dow whether, if the victim had related the same facts on many occasions and in the same sequence, the doctor would be able to tell if the statement were true. The response of the doctor was that it wasn't possible unless it was based on the truth. The essence of the testimony of Dr. Dow was that he thought the victim was telling the truth.

Dr. Lewis, a psychologist, was presented a longer hypothetical. The same ingredients, somewhat more ambiguous in nature, that had been propounded to Dr. Dow were included in the hypothetical addressed to Dr. Lewis. Basically, the concluding question after the hypothetical was whether, in the doctor's opinion, a child, such as the victim in this case, would be able to fabricate the details in the hypothetical. The answer was that the story was too complex and complicated for the victim to fabricate. The doctor further stated that he did not believe that the victim could be rehearsed enough to be able to repeat the same facts time and time again.

It is clear from the hypothetical questions and answers that the doctors were informing the jury that in their opinion the victim was telling the truth. This is exactly the situation which caused us to reverse the case of *Johnson* v. *State*, 292 Ark. 632, 732 S.W.2d 819 (1987). We also held that it was error to allow a psychologist to give testimony that the history by a child victim was consistent with sexual abuse in *Russell* v. *State*, 289 Ark. 533, 712 S.W.2d 916 (1986). The doctor should not have been allowed to testify that the victim was telling the truth. This error was prejudicial.

In view of our decision to reverse and remand for a new trial, it is not necessary for us to address the issues of the court overruling the motion to dismiss the charge and the motions for a bill of particulars and a continuance. These issues may not arise in a new trial.

We briefly mention some of the arguments made in this appeal for the benefit of the new trial. However, we will not discuss all of the other arguments raised on appeal because it is not likely that they will occur exactly in the same manner in a new trial. The first argument listed for reversal is that the court erred in failing to grant a change of venue because of the extreme publicity and attitude of the community. It may be that on retrial the community may have settled down and there may be no basis for such a motion. If the trial court determines that pretrial publicity prevents a fair trial in Benton County, he may transfer it to some other location where a fair trial can be had. See *Anderson v. State*, 278 Ark. 171, 644 S.W.2d 278 (1983); *Perry v. State*, 277 Ark. 357, 642 S.W.2d 865 (1982); *Ruiz v. State*, 265 Ark. 875, 582 S.W.2d 915 (1979); and *Swindler v. State*, 264 Ark. 107, 569 S.W.2d 120 (1978).

The appellant also argues that a special prosecutor should have been appointed because the present prosecutor hired two law clerks from the defense firm during the time the investigation and trial were pending. These same facts were involved in *Logan v. State*, 299 Ark. 266, 773 S.W.2d 413 (also decided this date), and we held that prejudicial error did not occur as a result of the trial court refusing to disqualify the prosecutor. The trial court conducted a hearing on this issue and refused to disqualify the prosecutor but in effect required the defense attorney to resign from the case. Although we cannot say that the trial judge abused his discretion by refusing to appoint a special prosecutor, we do note that this situation was the result of poor judgment on the part of the prosecutor in employing these clerks at that particular time.

The appellant argues that the trial court erred in allowing the victim and another young witness to testify. The qualifications for giving testimony are recognized by both parties. However, the facts may be presented in a different manner at the next trial. At the time the trial court will make a ruling based upon the evidence presented at the new trial.

It is not necessary to discuss the sufficiency of the evidence because the evidence presented may not be the same in the next trial. However, the evidence contained in the record of this trial is sufficient to support a conviction.

■ The appellant strongly argues that the trial court should have granted a mistrial due to the violation of the rule concerning sequestration of witnesses. Apparently, two witnesses, employees of the school which the victim attended, discussed the testimony presented or to be presented during the trial. Failure to make timely objection is one of the arguments raised by the state. It is not necessary to make that determination in this case, but the violation by a witness of the sequestration rule is a matter to be handled by the trial court. Sanctions against the witnesses would be a proper remedy. Also, if it is determined that testimony was perjured or otherwise prejudicial, it might be cause for mistrial or reversal. There is no evidence in the record to indicate that appellant was prejudiced by this violation of the sequestration rule.

■ The appellant argues that it was reversible error for the trial court to fail to admonish the jury to disregard the victim's non-responsive reply to a prosecutor's question. The reply by the victim was: "Rick did those [sexual] acts to my friend." The defense attorney was somewhat surprised and puzzled and stated: "Your Honor, I don't really know how to handle that. I think the jury should be instructed not to consider this sort of thing and it's not a responsive answer." The judge agreed that "it's not responsive." No admonition was given, and the defense attorney proceeded no further. It is the duty of a party making a motion to see that it is acted upon.

■ The appellant insists that a videotape of the Sunshine School was improperly viewed by the jury. Apparently this tape was a walk-through tour in which the victim and other students and employees explained the physical layout of the school. It shows the restroom where most of the sexual assaults allegedly occurred. No sound was used, and we are unable to say that the tape was not helpful to the jury. Nor are we able to say that the appellant has demonstrated prejudice. The trial court has the discretion to determine the relevance of evidence such as the videotape.

Reversed and remanded.

HICKMAN and HAYS, JJ., dissent.

STEELE HAYS, Justice, dissenting. The appellant argues that

the trial court erred in "allowing expert witnesses to answer hypothetical questions." The majority opinion sustains that contention on the ground that the questions were "too long and complicated for the jury to comprehend" and because the experts "were informing the jury that in their opinion the victim was telling the truth." I respectfully disagree with the majority on all counts.

As to length, I can find no instance where this court has ever taken issue with the length of a hypothetical question. The case law, which is clearly to the contrary, is summarized by the editors of Corpus Juris Secundum in Volume 32, *Evidence* § 551(2):

> The length of the hypothetical question is not a controlling consideration, and it is not objectionable that the question is lengthy, provided it is reduced to writing and embraces the whole situation in a connected manner, even though the question may be somewhat complicated and not entirely grammatical.

As to complexity, the question was not in the least complicated. It was a series of simple, factual declarations the witness was asked to assume.[1] At the end the witness was asked, "Based on those hypothetical situations, in your opinion is that something that a child of this level of functioning could fabricate?" These issues — the form and length of hypothetical questions — were for the discretion of the trial court [*Missouri Pacific Railroad Co.* v. *Hampton*, 195 Ark. 335, 112 S.W.2d 428 (1938)] and the majority opinion conspicuously ignores the standard of review customarily applied by appellate courts to the exercise of discretion by trial courts. It should be noted that the appellant made no objection on the basis of length or complexity.

The remaining ground for reversal is that by answering the hypothetical question, the experts were in effect expressing an

---

[1] The following excerpt is typical of the question in its entirety: "Assume, if you would, that this child was a student at the Sunshine School, that in October and November, 1984, he was assigned as a helper in a classroom with the primary children. Also assume, if you would, that his duties there were washing dishes, sweeping floors, washing off tables, and assume, also, that in the room with Jimmy during this period of time was a teacher's aide by the name of Rick, that the teacher in the room was the child's boss and sometimes in the room was another helper, a little girl . . . ."

opinion on the ultimate issue to be decided and were, therefore, invading the province of the jury. The majority opinion avoids using those words, but inasmuch as that was the only basis for objection by the appellant relevant to this appeal,[2] I take that to be the issue addressed by the majority opinion.

The majority opinion makes no attempt to analyze the question in light of prevailing authority, it simply makes a sweeping declaration that the testimony should not have been admitted, relying entirely on *Johnson* v. *State*, 292 Ark. 632, 732 S.W.2d 819 (1987), and *Russell* v. *State*, 289 Ark. 533, 712 S.W.2d 916 (1986). Neither opinion provides support for the majority's position.

In *Johnson*, a physician testified to his opinion that the victim had been raped. A majority of this court held that to be error, the rationale being that the physician had no objective evidence of rape and was relying entirely on what the victim told him. Rather than supporting the majority in this case, however, the *Johnson* opinion pointedly observes that the expert's testimony that the victim had been sexually abused would *not* have been objectionable on the basis that it was the "ultimate issue," citing A.R.E. Rule 703 and *Jennings* v. *State*, 289 Ark. 39, 709 S.W.2d 69 (1986).

Nor is *Russell* v. *State, supra*, more supportive. *Russell* is a plurality opinion of two justices [*see* Justice Hickman's concurring opinion, *Marcum* v. *State,* 299 Ark. 30, 771 S.W.2d 250 (1989)]. The "error" in *Russell* (which was held to be harmless) was that the testimony of a psychiatrist that the history given by a victim was consistent with sexual abuse was not admissible because it would not have aided the jury in its deliberations. Justice Hickman's concurrence in *Marcum* states my views more fully than did my dissent in *Russell*, but suffice it to say, the issue addressed by the plurality in *Russell* is not the same question presented in this case, nor was it the point preserved by appellant in the trial court. The short of the matter is, the majority is reversing the case based neither on relevant precedent nor

---

[2] Appellant objected to the hypothetical question on grounds of hearsay, that the question assumed facts not in evidence, tended to inflame the jury and invaded the province of the jury.

reasoned analysis.

The prosecuting witness in this case was a fourteen year old male who was retarded as a result of an acute illness at age four, rendering him unconscious for eleven days and on a respirator for four days. He suffered pronounced brain damage and his symptoms include epileptic seizures. One of the experts, a neurologist, had treated the child for over five years and the other, a clinical psychologist, had administered a number of tests. The substance of their testimony, admitted without objection prior to the hypothetical question, was that the child was capable of telling a lie, but not a very complex lie, or, if complex, he would have difficulty repeating it accurately. Given that set of circumstances, I believe it was within the trial court's discretion to permit an expert in the field to express an opinion concerning the ability of such an individual to fabricate an account of the alleged events. It is of little consequence, I believe, that the testimony approaches the ultimate issue. In fact, the law permits that in a good many situations, e.g., a lay witness is permitted to testify that a testator lacked mental competency, which is the ultimate issue in a will contest; a police officer who gives an opinion that a defendant was drunk is testifying to the ultimate issue; a physician who states an opinion that a prosecuting witness was the victim of a rape is testifying to the ultimate issue. There is, in short, ample authority for permitting a witness to testify on a given point even though it is the issue the jury is to decide. A.R.E. Rule 703; *Jennings v. State*, 289 Ark. 39, 709 S.W.2d 69 (1986); *Johnson v. State, supra; State v. Geyman*, 729 P.2d 475 (Mont. 1986); *Matter of J.W.K.*, 824 P.2d 164 (Mont. 1986); *Allen v. State*, 472 So.2d 1122 (Ala. Cr. App. 1985); *Roubideaux v. State*, 707 P.2d 35 (Okla. Cr. 1985); *Lawrence v. State*, 464 N.E.2d 923 (Ind. 1984); *State v. Meyers*, 359 N.W.2d 604 (Minn. 1984); *State v. Kim*, 645 P.2d 1330 (Hawaii 1982); *and see "Expert Testimony in Child Sexual Abuse Prosecutions: A Spectrum of Uses*," Boston University Law Review, Vol. 68:155.

My primary disagreement with what I perceive to be a summary rejection by the majority of the testimony in this case, irrespective of the trial court's exercise of discretion, is that it proceeds from an implicit assumption that evidentiary rules which are, at best, only arguably sound where the victim of a sexual offense is a competent adult, are unquestionably sound in

cases in which the victim is neither, but is a child and mentally retarded in the bargain. Surely the law is capable of differentiating between the two.

HICKMAN, J., joins.