Lester Lee TOUVELL *v.* STATE of Arkansas

CR 89-22 772 S.W.2d 347

Supreme Court of Arkansas
Opinion delivered July 3, 1989

*James R. Marschewski*, for appellant.

*Steve Clark*, Att'y Gen., by: *Olan W. Reeves*, Asst. Att'y Gen., for appellee.

STEELE HAYS, Justice. This appeal of a criminal case raises only one argument — the trial court erred in refusing to grant a continuance so the defense could procure the attendance of a witness. The argument has no merit.

Appellant, Lester Touvell, was charged with the offenses of rape, kidnapping and aggravated robbery stemming from occurrences on July 31, 1987. Mary Desonie, the victim, testified that she returned home from work about 7:15 a.m. to find the appellant in her home. She struggled with the appellant but was overpowered and then raped. Appellant forced her to drive him to a bank where she withdrew money from an automatic teller. He took the money and had her drive to a liquor store and to another bank in an effort to cash her payroll check. She cashed the check at the second bank and appellant took that money and they continued to drive around for another hour. At one point appellant had her get out of the car in an isolated area and told her he was going to kill her. She pleaded with him and they got back into the car, made one more stop for gas, and then appellant had her let him out of the car.

Appellant's trial was held on June 28 and 29, 1988, and appellant testified, his defense being he was with the victim on that morning, but had not raped her nor had intercourse with her.

By his account, he lived across the street and was on his steps on the morning in question. When Ms. Desonie drove up he was just leaving to go look for a job and they struck up a conversation. She invited him in, he had a coke and they talked about going to the races. He told her he didn't have any money and she offered to lend him some. They drove to the bank and then drove to the liquor store, where the victim was unsuccessful in cashing her check. She then dropped him off at a friend's house so he could get a shirt to wear to the races. He said she was going to pick him up but she never came back.

The jury found appellant guilty on all three charges. He was sentenced to life imprisonment for the rape, forty years for the aggravated robbery and thirty years on the kidnapping as well as a $15,000 fine.

Appellant appeals from that judgment arguing only that the trial court erred in refusing to grant a continuance. On June 28, 1988, just prior to the beginning of trial, the defense counsel made a motion for a continuance in order to obtain the presence of a material witness. The defense counsel stated that Jerry Oliver was an attendant at the gas station where the victim had said they stopped to get gas. Counsel stated he had talked to Oliver in January and described appellant as having "tattoos all over his body" and that he had no shirt on that day. Counsel said Oliver told him he was working that day but no one matching that description had come to the station.

Counsel further stated that he had subpoenaed Oliver previously for an earlier trial date that had been continued, and that Oliver had been available. Counsel stated he found out the day before this trial that Oliver was no longer working at the gas station and the sheriff's office had been unable to serve him; that the sheriff's office told him Oliver was wanted for either a contempt citation or for a levy on a civil matter and for that reason Oliver might be trying to evade the law. Counsel stated he had then driven out to the gas station and the attendant there knew Oliver and saw him once in a while but had not seen him lately and thought Oliver was working and living in Ft. Smith. The trial court denied the motion for a continuance.

The burden of proof and standard of review was stated in *David v. State*, 295 Ark. 131, 748 S.W.2d 117 (1988):

The burden is on the movant to show good cause for a continuance. A.R.Cr.P. Rule 27.3. A motion for continuance is addressed to the sound discretion of the trial court and the court's decision will not be reversed absent a clear abuse of that discretion amounting to a denial of justice. *Orsini* v. *State*, 281 Ark. 348, 665 S.W.2d 245 (1984). The burden of proving prejudice and an abuse of discretion rests on the appellant. *Kelly* v. *State*, 261 Ark. 31, 545 S.W.2d 919 (1977) . . . .

■ The court considers several factors in considering whether a continuance should be granted, including: the diligence of the movant, the probable effect of the testimony, the relevance of the testimony, and the likelihood of procuring the witness in the event of a postponement. *Davis* v. *State*, 267 Ark. 1159, 594 S.W.2d 47 (1980); *Kelly* v. *State, supra.* Applying those factors to the facts of this case, we find no abuse of discretion.

The factor weighing most heavily in this case is the relevance of the testimony and its probable effect. While appellant contends the issue in the case was one of credibility and therefore, the witness' presence was important to impeach the victim's testimony, the argument is overstated. The victim's testimony was corroborated, the appellant's account was improbable and Oliver's testimony in any case had little probative value or relevance.

The victim testified that in her struggle with appellant her glasses were broken and she was cut on her face. The doctor who examined her testified she had a cut on the bridge of her nose and another above her eye. He also testified that she had a labial abrasion. When the victim arrived back at her home she called her father who came over immediately. He testified that when he saw her it was "obvious she was hurt," that she had bruises around her face. The detective who interviewed her testified that she was very shaken and it was obvious that something had occurred to her.

The defense was not able to present any other explanation for the victim's injuries and condition, nor any motive for the victim to ask this stranger to go to the races with her after she had just been working all night, or to lend him $100, or for the fabrication of this charge. Given the foregoing, the limited effectiveness of Oliver's testimony as next noted, is further

diminished.

Defense counsel stated he had described appellant to Oliver as a man with no shirt and "tattoos all over his body," and that Oliver had not remembered anyone fitting that description. While this might appear to be helpful to the defense, a further reading of the record dispels that thought. When the victim described appellant, she only noted a tattoo on his left arm — the side she observed most of the time she was with appellant, which was in her car. She did not describe him as someone with tattoos all over his body, and she had noted he did not have his shirt on during the time she was with him. When appellant took the witness stand he described his tattoos as being only on his right and left arms except for one he described as a heart on his left chest.

Given that testimony, appellant was not aptly described to the gas attendant as having tattoos "all over his body," and it is therefore not surprising that he had not remembered such a person. In contrast, a man without a shirt in the middle of the summer with some tattoos on his arms would not be particularly unusual. Additionally, the inquiry was made five or six months after the date in question and the ability to recollect customers from the past summer on a particular day would be difficult at best. Hence, the testimony would seem to have little probative value. Nor did the impeachment testimony contradict any vital part of the victim's testimony, merely an incidental part of her description of the episode.

 Considering all the factors in this case, we find no abuse of the sound discretion given to the trial court in these matters.

AFFIRMED.